Attorney ID AB2814
A. Michael Barker, Esquire
Vanessa E. James, Esquire
Attorney ID VEJ0548
BARKER, GELFAND, JAMES & SARVAS
a Professional Corporation
Linwood Greene – Suite 12
210 New Road
Linwood, New Jersey 08221
(609) 601-8677
AMBarker@BarkerLawFirm.net
Our File Number: 60302-01
Attorney for Defendants, Jennifer Webb-McRae, Harold Shapiro [incorrectly captioned as Howard Shapiro], Richard Necelis, and Ronald Cuff, Individually and in their Official Capacities, and Cumberland County, a New Jersey Municipal Corporation

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY – CAMDEN

| | |
|---|---|
| ROBERT BERNARD,<br><br>    Plaintiff<br>v.<br><br>JENNIFER  WEBB-MCRAE, HOWARD SHAPIRO [sic], RICHARD NECELIS, and RONALD CUFF, individually and in their official capacities, and CUMBERLAND COUNTY, a New Jersey Municipal Corporation,<br><br>    Defendants | Civil Action<br>Number 17-cv-07030 (RBK/AMD)<br><br>**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS** |

On the Brief:
Vanessa E. James, Esquire

# **TABLE OF CONTENTS**

I.      PREAMBLE ................................................................................... 1

II.     STATEMENT OF FACTS ......................................................... 2

III.    LEGAL ARGUMENT ............................................................... 2

        A.  Standard of Review ......................................................... 2

        B.  Plaintiff's Title VII claim should be dismissed based on Plaintiff's failure to exhaust his administrative remedies. ................................... 4

        C.  Plaintiff's Title VII and NJLAD retaliation claims are analyzed analogously using the McDonnell Douglas framework................5

        D.  Plaintiff cannot establish the causation element of his Title VII and NJLAD retaliation claims...............................................6

        E.  In the alternative, Plaintiff cannot establish the "protected conduct" element of his Title VII and NJLAD claims............................8

        F.  In the alternative, Plaintiff cannot establish the "adverse employment action" element of his Title VII and NJLAD claims...................9

             1.  The sustained finding resulting from the Cruz investigation ............... 10

             2.  The transfer to the Grand Jury/Trial Unit.................................11

             3.  The "Brady" disclosures.....................................................12

             4.  The I.A. investigation into a search warrant being served on an incorrect residence................................................13

             5.  Plaintiff has not applied for any promotion and thus has no viable failure to promote claim....................................14

i

G.  In the alternative, Defendants have a legitimate business reason
of the employment actions taken as to Plaintiff which Plaintiff
cannot sufficiently rebut…………..……………………………....15

H.  Plaintiff's retaliation claims pursuant to 42 U.S.C. 1983 and
the NJCRA are analyzed analogously and should therefore be
dismissed for the same reasons….…………………………...……17

I.   Plaintiff cannot establish his 42 U.S.C. 1983 and NJCRA
retaliation claims……………………………………..……………18

J.   Plaintiff cannot establish his 42 U.S.C. 1983 due process
claim………………………………………………………………21

K.  Plaintiff cannot establish his 42 U.S.C. 1985 civil right conspiracy
claim………………………………………………………………23

IV.   CONCLUSION……………………………………………………………26

## **TABLE OF AUTHORITIES**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ............................................. 3

Applewhite v. Twp. of Millburn, 2013 U.S. Dist. LEXIS 145759
(D.N.J. October 9, 2013) ...................................................................................... 18

Armstrong v. Manzo, 380 U.S. 545 (1965)............................................................. 21

Aulson v. Blanchard, 83 F.3d 1 (1st Cir. 1996) ...................................................... 24

Barnes v. Office Depot, Inc., 2009 U.S. Dist. LEXIS 109519
(D.N.J. Nov. 24, 2009) ........................................................................................... 5

Barzanty v. Verizon Pennsylvania, Inc., 361 F. App'x 411 (3d Cir. 2001) .............. 4

Beasley v. Passaic Cty., 377 N.J. Super. 585 (Super. Ct. App. Div. 2005)............ 13

Berry v. N.J. State Prison, 2009 U.S. Dist. LEXIS 115171
(D.N.J. December 10, 2009)................................................................................... 7

Betts v. Summit Oaks Hosp., 687 Fed. Appx. 206 (3d Cir. Apr. 27, 2017) ........... 10

Bjorgung v. Whitetail Resort, LP, 550 F.3d 263 (3d Cir. 2008).............................. 3

Bray v. Alexandria Women's Health Clinic, 506 U.S. 263 (1993) ......................... 24

Breaux v. City of Garland, 205 F.3d 150 (5th Cir. 2000) ...................................... 13

Burlington Indus. Inc. v. Ellerth, 524 U.S. 742 (1998)....................................... 9, 10

Cardenas v. Massey, 269 F.3d 251 (3d Cir. 2001)................................................. 10

Celestine v. Foley, 2010 U.S. Dist. LEXIS 132511 (D.N.J. December 14, 2010). 17

Celotex Corp. v. Catrett, 477 U.S. 317 (1986)........................................................ 3

Clayton v. City of Atl. City, 722 F. Supp. 2d 581 (D.N.J. 2010) ........................... 22

Congregation Kol Ami v. Abington Twp, 309 F.3d 120 (3d Cir. 2002) .................. 3

Cottrell v. Wheels, 2011 U.S. Dist. LEXIS 26646 (D.N.J. Mar. 15, 2011)............ 18

Den Hollander v. Twp. Of Franklin, 2010 N.J. Super. Unpub. LEXIS 2314
(Law Div. January 22, 2010).................................................................. 17

Dykes v. Se. Pa. Transp. Auth., 68 F.3d 1564 (3d Cir. 1995) ................................ 23

El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145 (App. Div. 2005) .......... 13

Farber v. City of Paterson, 440 F.3d 131 (3rd Cir. 2006)................................ 24, 25

Fiorentini v. William Penn Sch. Dist., 665 F. App'x 229 (3d Cir. 2016) ............... 10

Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994)........................................................ 15

H&R Grenville Fine Dining, Inc. v. Borough of Bay Head, 2011 U.S. Dist. LEXIS
145447 (D.N.J. Dec. 19, 2011)................................................................. 23

Gorum v. Sessoms, 561 F.3d 179 (3d Cir. 2009)...................................................... 19

Hargrave v. Cnty. of Atl., 262 F. Supp. 2d 393 (D.N.J. 2003) ................................ 9

Hay v. GMAC Mortgage Corp., 2003 U.S. Dist. LEXIS 16550
(E.D. Pa. Sept. 11, 2003)......................................................................... 10

Higgins v. Pascack Valley Hosp., 158 N.J. 404 (1999)........................................... 13

Hill v. Borough of Kutztown, 455 F.3d 225 (3d Cir. 2006) .................................... 19

Horneff v. PSEG Nuclear, LLC, 2015 U.S. Dist. LEXIS 6613
(D.N.J. Jan. 21, 2015)............................................................................... 8

Jones v. Fitzgerald, 285 F.3d 705 (8th Cir. 2002).................................................... 13

Johnson v. Shinseki, 410 F. App'x 473 (3d Cir. 2011) .............................................. 4

Lake v. Arnold, 112 F.3d 682 (3d Cir. 1997)........................................................... 23

Lehmann v. Toys R Us, Inc., 132 N.J. 587 (1993) .................................................... 5

Marrero v. Camden Cnty. Bd. of Soc. Servs.,164 F. Supp.2d 455 (D.N.J. 2001) .... 9

Mathews v. Cingular Wireless, 2011 U.S. Dist. LEXIS 16506
(D.N.J. Feb. 16, 2011) ........................................................................................ 8

Mathews v. Eldridge, 424 U.S. 319 (1976)............................................................. 21

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,475 U.S. 574 (1986)................ 3

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)....................................... 5

Middleton v. City of Ocean City, 2014 U.S. Dist. LEXIS 88368
(D.N.J. June 30, 2014)........................................................................................ 17

Mitchell v. Miller, 884 F. Supp. 2d 334 (W.D. Pa. 2012) ...................................... 20

Moore v. City of Phila., 461 F.3d 33 (3d Cir. 2006)........................................... 5, 15

Nicholas v. Pa. State Univ., 227 F.3d 133, 142 (3d Cir. 2000) .............................. 21

Rezem Family Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103
(App. Div. 2011).................................................................................................. 17

Rizzo v. PPL Serv. Corp., 2005 U.S. Dist. LEXIS 6757
(E.D. Pa. Apr. 19, 2005) ................................................................................ 10, 14

Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997)................................. 9

Rodriguez v. Ready Pac Produce, 2014 U.S. Dist. LEXIS 64139
(D.N.J. May 9, 2014)............................................................................................. 4

Russo v. Voorhees Twp., 403 F. Supp. 2d 352 (D.N.J. 2005)................................. 25

Skoorka v. Kean Univ., 2019 U.S. Dist. LEXIS 39024
(D.N.J. Mar. 11, 2019) ....................................................................................... 14

Slagle v. Cnty. Of Clarion, 435 F.3d 262 (3d Cir. 2006)......................................... 8

Smith v. Twp. of E. Greenwich, 519 F. Supp. 2d 4930 (D.N.J. 2007).................... 21

Spinks v. Twp. of Clinton, 402 N.J. Super. 465 (App. Div. 2008)........................ 13

Storms v. KA Indus. Servs., LLC, 2014 U.S. Dist. LEXIS 87893
(D.N.J. June 26, 2014)....................................................................................... 4

Swain v. City of Vineland, 457 F. App'x 107 (3d Cir. 2012) ................................ 11

Tuthill v. Consolidated Rail Corp., 1997 U.S. Dist. LEXIS 13304
 (E.D. Pa. Aug. 26, 1997) .................................................................................. 8

Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013).................................. 6

Urey v. Grove City College, 94 Fed. Appx. 79 (3d Cir. 2004).............................. 10

Williams v. Bristol-Myers Squibb Co., 85 F.3d 270 (7th Cir. 1996) ..................... 11

Williams v. Phila. Hous. Auth. Police Dept., 380 F.3d 751 (3d Cir. 2004).............. 7

Williams v. Rowan Univ., 2014 U.S. Dist. LEXIS 171396
(D.N.J. Dec. 11, 2014)...................................................................................... 18

Woods v. Salisbury Behavioral Health, Inc., 3 F. Supp. 3d 238
(M.D. Pa. 2014) ................................................................................................ 11

## **Statutes**

L. Civ. R. 56.1(a).................................................................................................. 2
Federal Rule of Civil Procedure 56(c) ............................................................ 2, 3
N.J.S.A. 10:6-2 ................................................................................................... 17

## I.    PREAMBLE

Succinctly, Plaintiff, Cumberland County Prosecutor's Office ("CCPO") Detective Bernard, alleges that he was subjected to retaliation after he provided a statement as part of a CCPO internal investigation wherein Plaintiff allegedly corroborated some allegations of sexual harassment made by Plaintiff's colleague, CCPO Detective Lynn Wehling. Specifically, Plaintiff alleges that he was subject to an internal affairs investigation which resulted in a "sustained" finding. Plaintiff also alleged that due to this "sustained" finding, a "Brady" disclosure was made as part of a criminal wiretap investigation which occurred years later wherein CCPO First Assistant Prosecutor Harold Shapiro determined that Plaintiff would not be an affiant due to the "sustained" finding presenting a potential Brady issue. Plaintiff also alleges that he was subject to retaliation because he has not been promoted, was transferred to the Grand Jury/Trial Unit and when he was subject to an internal affairs investigation involving the alleged misidentification of residence upon which a search warrant was served. Finally, Plaintiff alleges that he was denied due process because he was not given proper notice, a/k/a, a "target letter," for either of the above internal affairs investigations.

While, as will be explained in detail below, Plaintiff's retaliation claims fail for a number of reasons, at base, Plaintiff simply has no evidence to demonstrate causation. As this Court is well aware, *post hac ergo proctor hac* logic is not

sufficient competent evidence of causation. Additionally, even if Plaintiff could establish causation, he cannot establish that he engaged in protected activity because giving a truthful statement as part of an internal investigation (as Plaintiff was required to do) is not considered "protected activity." Moreover, Plaintiff cannot show that he suffered an adverse employment action because he established that any of the alleged retaliatory conduct materially impacted his salary, job title, potential for advancement or benefits. Plaintiff's due process claims fail because he was not entitled to receive a "target letter" as Plaintiff asserts and, even if he was, the failure to provide the letter does not constitute a due process violation. Thus, as will be explained in detail below, summary judgment should be granted as to all claims against all Defendants and, as such, this action should be dismissed in its entirety with prejudice.

## II.   STATEMENT OF FACTS

As required by L.Civ.R. 56.1(a), Defendants' Statement of Facts has been removed from the Brief and separately bound.

## III.   LEGAL ARGUMENT

## A.   Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of fact exists if a reasonable jury could possibly hold in the non-movant's favor on that issue. Congregation Kol Ami v. Abington Twp., 309 F.3d 120, 130 (3d Cir. 2002). Further, a fact is "material" only if it will affect the outcome of a lawsuit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the non-moving party. Bjorgung v. Whitetail Resort, LP, 550 F.3d 263, 268 (3d Cir. 2008). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Id. at 268 (quoting, Anderson, 477 U.S. at 247-48). It is the burden of the moving party to demonstrate that no genuine issue of material fact remains. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

"Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party 'must do more than simply show that there is some metaphysical doubt as to material facts.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The non-moving party must demonstrate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324.

**B.** **Plaintiff's Title VII claim should be dismissed based on Plaintiff's failure to exhaust his administrative remedies.**

In the instant case, Plaintiff has not presented any evidence that he obtained the requisite "right to sue" letter from the EEOC to legally enable Plaintiff to pursue his Title VII claims in federal court.

> *Before a plaintiff can sue in federal court under Title VII, he must exhaust his administrative remedies. The Third Circuit has explained the process as follows:*
>
> *A plaintiff bringing an employment discrimination claim under Title VII must comply with the procedural requirements set forth in 42 U.S.C. § 2000e-5. Before filing a lawsuit, a plaintiff must exhaust her administrative remedies by filing a timely discrimination charge with the EEOC. The EEOC will then investigate the charge, and the plaintiff must wait until the EEOC issues a right-to-sue letter before she can initiate a private action. Barzanty v. Verizon Pennsylvania, Inc., 361 F. App'x 411, 413 (3d Cir. 2001) (citations omitted). The requirement that administrative remedies be exhausted applies to both retaliation and discrimination claims under Title VII. Johnson v. Shinseki, 410 F. App'x 473 (3d Cir. 2011).*
>
> Rodridguez v. Ready Pac Produce, 2014 U.S. Dist. LEXIS 64139, at *26 (D.N.J. May 9, 2014).

In the instant case, Plaintiff has not presented evidence that he properly exhausted his administrative remedies with regard to his Title VII retaliation claim. Thus, the First Count of the Amended Complaint, Plaintiff's Title VII retaliation claim should be dismissed.

### C.   Plaintiff's Title VII and NJLAD retaliation claims are analyzed analogously using the <u>McDonnell Douglas</u> framework.

"Retaliation claims raised under Title VII and the NJ LAD are analyzed under the same <u>McDonnell Douglas</u> burden shifting framework utilized in the discrimination context." <u>Barnes v. Office Depot, Inc.</u>, 2009 U.S. Dist. LEXIS 109519, at *30-31 (D.N.J. Nov. 24, 2009); <u>see also</u>, <u>Storms v. KA Indus. Servs., LLC</u>, 2014 U.S. Dist. LEXIS 87893, at *34 n.5 (D.N.J. June 26, 2014) ("Analysis under state law, specifically the New Jersey Law Against Discrimination ("LAD"), mirrors the Title VII analysis because the New Jersey Supreme Court has explained that '[i]n construing the terms of the LAD, this Court has frequently looked to federal precedent governing Title VII . . . .'), <u>citing</u>, <u>Lehmann v. Toys R Us, Inc.</u>, 132 N.J. 587, 600, 626 A.2d 445 (1993).

To demonstrate a defendant-employer's liability for Title VII retaliation, a plaintiff must have evidence that he (1) engaged in Title VII-protected activity; (2) the defendant-employer took adverse employment action against the plaintiff; and (3) there was a causal nexus between the plaintiff's participation in the protected activity and the defendant's adverse action. <u>Moore v. City of Phila.</u>, 461 F.3d 331, 340-41 (3d Cir. 2006); <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

Thus, in the instant case, Plaintiff's Title VII (First Count) and NJLAD (Fifth Count) retaliation claims are subject to the same analysis and should be dismissed for the same reasons, set forth below.

### D. Plaintiff cannot establish the causation element of his Title VII and NJLAD retaliation claims.

Under Title VII, to establish causation for a retaliation claim, plaintiffs must show that their participation in protected activity was a "but-for" cause of their adverse employment action. <u>Univ. of Tex. Sw. Med. Ctr. v. Nassar</u>, 570 U.S. 338, 133 S. Ct. 2517, 2533, 186 L. Ed. 2d 503 (2013). This standard requires plaintiff to demonstrate that the adverse action "would not have occurred" absent the alleged wrongful retaliation. <u>Id.</u>; <u>see also</u>, <u>D'Ambrosio v. Crest Haven Nursing & Rehab. Ctr.</u>, 755 F. App'x 147, 153 (3d Cir. 2018) ("The Supreme Court has clarified that the third element of a Title VII retaliation claim requires but-for causation.").

> *A plaintiff may rely on a broad array of evidence to demonstrate the causal link between the protected activity and the adverse employment action taken. She can meet this burden by proffering evidence of an employer's inconsistent explanation for taking an adverse employment action, a pattern of antagonism, or temporal proximity unusually suggestive of retaliatory motive. These are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference.*
> <u>Carvalho-Grevious v. Del. State Univ.</u>, 851 F.3d 249, 260 (3d Cir. 2017) *(internal citations and quotations omitted)*.

In the instant case, the evidence, neither when analyzing the individual factors above, nor the evidence "as a whole" is sufficient to raise an inference that Plaintiff

alleged protected conduct and adverse actions. First, Plaintiff has not presented evidence that Defendants have given "inconsistent" explanations for the adverse actions taken against Plaintiff. Second, Plaintiff has not presented evidence of any pattern of antagonism. Plaintiff has not shown that he was disciplined more harshly or more often than other employees. While Plaintiff alleges that other officers made a practice of signing CI payments as witnesses for payments they did not actually witness, Plaintiff has presented no evidence to support these claims. With regard to the Brady notification letter, it is undisputed that Brady disclosures were issued for three other officers involved the wiretap investigation in addition to Plaintiff. (R. 111). Finally, the time between the protected activity and the alleged retaliation in the instant case is not "usually suggestive" so as to create a presumption of causation. By Plaintiff's own estimation, his protected activity occurred in April 2013, and the initial retaliatory conduct, i.e. the sustained violated which resulted from the Cruz investigation, occurred sometime in 2014 (Cuff issued a memo regarding is findings in late October 2014.)[1] See, Berry v. N.J. State Prison, 2009 U.S. Dist. LEXIS 115171 (D.N.J. December 10, 2009) (finding that a five-month time-lag between complaint and adverse action is not "so unusually suggestive" that temporal proximity alone creates a presumption of causation.); see also Williams v. Phila.

_____

[1] See, Exhibit 16, CC/000969-CC/000985.

Brief in Support of Motion for Summary Judgment by Defendants
BARKER, GELFAND, JAMES & SARVAS ● A PROFESSIONAL CORPORATION ●LINWOOD, NEW JERSEY 08221

Hous. Auth. Police Dept., 380 F.3d 751, 760 (3d Cir. 2004) (finding that a two-month time-lag between protected activity and alleged retaliation does not necessarily give rise to inference of causation); Horneff v. PSEG Nuclear, LLC, 2015 U.S. Dist. LEXIS 6613, at *43 (D.N.J. Jan. 21, 2015) (finding that an approximate 3-month time lag was not "usually suggestive" in terms of temporal proximity). Thus, in the instant case, Plaintiff cannot establish the causation element of his Title VII and NJLAD retaliation claims.

> **E.    In the alternative, Plaintiff cannot establish the "protected conduct" element of his Title VII and NJLAD claims.**

In the alternative, Plaintiff cannot establish that he engaged in "protected activity" within the meaning of Title VII and the NJLAD. Participating in an internal investigation is not considered "protected conduct." See, e.g., Slagle v. Cnty. Of Clarion, 435 F.3d 262, 265 (3d Cir. 2006); Mathews v. Cingular Wireless, 2011 U.S. Dist. LEXIS 16506, at *5 (D.N.J. Feb. 16, 2011); Tuthill v. Consolidated Rail Corp., 1997 U.S. Dist. LEXIS 13304, at *4 (E.D. Pa. Aug. 26, 1997). In the instant case, the only "protected activity" alleged by Plaintiff is his participation in the internal affairs investigation into complaints made by CCPO Det. Lynn Wehling. As Plaintiff acknowledges, Wehling's civil lawsuit settled prior to trial, which Plaintiff learned from reading the newspaper. (R. 23). Thus, Plaintiff cannot establish the "protected conduct" element of his Title VII and NJLAD retaliation claims.

**F.    In the alternative, Plaintiff cannot establish the "adverse employment action" element of his Title VII and NJLAD claims.**

In the alternative, Plaintiff cannot show he suffered an adverse employment action within the meaning of Title VII and the NJLAD. For purposes of Title VII, an adverse employment action is one that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment, deprive her future employment opportunities, or otherwise have a 'materially adverse' effect on her status as an employee." Hargrave v. Cnty. of Atl., 262 F. Supp. 2d 393, 427 (D.N.J. 2003), quoting, Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300-01 (3d Cir. 1997), citing, Burlington Indus. Inc. v. Ellerth, 524 U.S. 742, 749, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998) (defining adverse employment action as "significant change in employment status, such as hiring, firing, failing to promote, reassignment, a decision causing a significant change in benefits"). An adverse employment action is defined similarly for purposes of the NJLAD. Marrero v. Camden Cnty. Bd. of Soc. Servs., 164 F. Supp.2d 455, 473 (D.N.J. 2001) ("In order to constitute adverse employment action for purposes of the LAD, retaliatory conduct must affect adversely the terms, conditions, or privileges of the plaintiff's employment or limit, segregate, or classify the plaintiff in a way which would tend to deprive her of employment opportunities or otherwise affect her status as an employee.") (*internal quotations omitted*). As will be explained in detail below, none

of the alleged retaliatory conduct in the instant case qualifies as an adverse employment action.

### 1.     The sustained finding resulting from the Cruz investigation.

"An actionable adverse employment action is 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Betts v. Summit Oaks Hosp., 687 Fed. Appx. 206, 2017 U.S. App. LEXIS 7418, 2017 WL 1506640, at *2 (3d Cir. Apr. 27, 2017), quoting, Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998)). Stated differently, an adverse employment action must be "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Fiorentini v. William Penn Sch. Dist., 665 F. App'x 229, 234 (3d Cir. 2016), quoting, Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001)).

"A written reprimand is, in and of itself, clearly not enough to rise to the level of an adverse employment action." Rizzo v. PPL Serv. Corp., 2005 U.S. Dist. LEXIS 6757, at *25 (E.D. Pa. Apr. 19, 2005); see also, Hay v. GMAC Mortgage Corp., 2003 U.S. Dist. LEXIS 16550 (E.D. Pa. Sept. 11, 2003); Urey v. Grove City College, 94 Fed. Appx. 79, 81 n.2 (3d Cir. 2004). The sustained finding was the equivalent a written reprimand. It did not result in any suspension, demotion or change in pay. While Plaintiff may attempt to argue that the adverse action was not the sustained

finding itself but the resulting "Brady" issues surrounding Plaintiff and the wiretap investigation, the two are very separate occurrences: they occurred years apart and Plaintiff has absolutely no evidence that Cuff made the recommendation regarding a sustained disciplinary finding against Plaintiff with regard to the Cruz investigation in anticipation that, years later, FAP Shapiro would take some action against Plaintiff. Defendants will analyze the extent to which the "Brady" issues constitute an adverse employment action below.

### 2.    The transfer to the Grand Jury/Trial Unit.

Plaintiff's transfer to the Grand Jury/Trial Unit was not an adverse employment action. See, Woods v. Salisbury Behavioral Health, Inc., 3 F. Supp. 3d 238, 251 (M.D. Pa. 2014) (holding that to establish that a denial of a transfer was an adverse employment action, the plaintiff must establish "that the position was objectively better [or worse] than his or her current position"); see also, Swain v. City of Vineland, 457 F. App'x 107, 110 (3d Cir. 2012), citing, Williams v. Bristol-Myers Squibb Co., 85 F.3d 270, 274 (7th Cir. 1996) ("A purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action."). While Plaintiff asserts that the Grand Jury/Trial Unit is a "putative" assignment which provided less opportunity for overtime than his previous assignment, he has produced no competent evidence to support this allegation.

### 3.     The "Brady" disclosures.

As described above, an "adverse employment action" is one which results in a "significant change in status." This requirement is not satisfied with regard to the Brady issues regarding Plaintiff and the wiretap investigation. As FAP Shapiro explained, the wiretap investigation was lengthy, "very involved" and high profile. (R. 112). Thus, "in an abundance of caution," due to the sustained finding from the Cruz investigation, FAP Shapiro made a decision that Plaintiff should not be an affiant for the wiretap investigation. (R. 108-110). It was later determined that Plaintiff had handled some evidence during the wiretap investigation and thus was a potential "chain of custody" witness at trial. Thus, again, out of an "abundance of caution," FAP Shapiro issued a Brady disclosure letter for Plaintiff and three other potential officer witnesses. (R. 111). It is simply not the case that Plaintiff has been labeled as a "Brady officer" and is thereby prohibited from testifying into perpetuity (indeed Plaintiff was listed as a potential testifying witness in the wiretap case itself); rather, FAP Shapiro made determinations specific to the wiretap investigation that essentially it was "better to be safe than sorry" given the importance of that investigation.  In that regard, while Plaintiff has asserted that the "Brady disclosure" has materially affected his ability to testify in future cases, he has not presented any evidence to support this allegation. Thus, FAP Shapiro's determinations regarding

potential "Brady issues" in the wiretap investigation does not constitute an adverse employment action.

> ### 4.   The I.A investigation into a search warrant being served on an incorrect residence.

A mere investigation without more does not constitute adverse employment action under the NJLAD. El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 170, 887 A.2d 1170 (App. Div. 2005); see also, Beasley v. Passaic Cty., 377 N.J. Super. 585, 606-07, 873 A.2d 673, 684-85 (Super. Ct. App. Div. 2005) ("[A]n investigation of an employee is not normally considered retaliation."), citing, Jones v. Fitzgerald, 285 F.3d 705, 715 (8th Cir.2002); Breaux v. City of Garland, 205 F.3d 150, 158 (5th Cir.), cert. denied, 531 U.S. 816, 121 S.Ct. 52, 148 L.Ed.2d 21 (2000). "An investigation, if conducted properly, should reveal whether the basis for the complaint is reasonable." Beasley, supra, citing, Higgins v. Pascack Valley Hosp., 158 N.J. 404, 424, 730 A.2d 327, 338 (1999); see also, Spinks v. Twp. of Clinton, 402 N.J. Super. 465, 484, 955 A.2d 304, 316 (App. Div. 2008). ("An employer must be free to investigate complaints of employee misconduct without fear of LAD liability. Only when the investigation results in some real detriment, such as a suspension, demotion, or termination, should the aggrieved employee be able to invoke the protection of the LAD."). Thus, the investigation itself cannot constitute an adverse employment action.

Plaintiff alleges that as a result of the investigation he received a "verbal written reprimand" (R. 58), which as evidenced by <u>Rizzo</u>, *supra*, <u>Hay</u>, *supra*, and <u>Urey</u>, *supra*, does not rise to the level of an adverse employment action.

> **5.     Plaintiff has not applied for any promotion and thus has no viable failure to promote claim.**

To the extent Plaintiff makes a failure to promote claim, that claim fails because, as Plaintiff admits, he has not applied for any promotion during the relevant time period. (R. 65). It is also undisputed that there is a formal application process for officer promotions within the CCPO, an officer must formally apply for the position. (R. 188-189). In other words, there are no "automatic" promotions or "informal" promotional process; on the contrary, an officer must actually submit an application to be considered for a promotion. Thus, Plaintiff cannot establish a failure to promote claim. <u>See</u>, <u>Skoorka v. Kean Univ.</u>, 2019 U.S. Dist. LEXIS 39024, at *20 n.18 (D.N.J. Mar. 11, 2019) (dismissing the plaintiff's failure to promote claim because the plaintiff did not allege that he applied for the position or the position was being filled through some sort of informal process where no application was necessarily required).

**G.**   **In the alternative, Defendants have a legitimate business reason of the employment actions taken as to Plaintiff which Plaintiff cannot sufficiently rebut.**

In the alternative, even if Plaintiff could establish a *prima facie* case for retaliation under Title VII and/or the NJLAD, the Defendants have proffered legitimate business reasons for the employment actions taken which Plaintiff cannot sufficiently rebut.

> *If the employee establishes this prima facie case of retaliation, the familiar McDonnell Douglas approach applies in which "the burden shifts to the employer to advance a legitimate, non-retaliatory reason" for its conduct and, if it does so, "the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500-01 (3d Cir. 1997). To survive a motion for summary judgment in the employer's favor, a plaintiff must produce some evidence from which a jury could reasonably reach these conclusions. Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).*
> Moore v. City of Phila., 461 F.3d 331, 342 (3d Cir. 2006).

In the instant case, the actions taken by the Defendants were reasonable and based on legitimate business reasons. It does not appear that Plaintiff is challenging the decision to initiate the Cruz investigation as the investigation began in 2012, prior to Plaintiff's alleged protected conduct in 2013, but rather the "sustained" finding against him which resulted from the investigation. The sustained finding against Plaintiff as a result of the Cruz investigation was based on a legitimate reason, namely, Plaintiff signed a CI payment form as a witness when, in fact,

Plaintiff did not actually witness the payment. (R. 76, 84-89, 182-183). While Plaintiff contends that it was a common practice within the CCPO during that time period to sign CI payment forms as a witness despite having not witnessed payment, Plaintiff has presented no evidence that this was the case beyond his own allegations. Plaintiff's transfer to the Grand Jury/Trial Unit was undisputedly in part a large organizational restructure in which 24 officers, Plaintiff among them, were transferred. (R. 187). As Chief Necelis testified, when he took over as Chief, he made it a practice to rotate officers through various units and, as such, nearly every CCPO has been transferred at least once since Necelis took over as Chief. (R. 133-134). Regarding FAP Shapiro's decision that Plaintiff would not be an affiant on the wiretap case, as Shapiro explained, the wiretap was an extremely long, large and costly investigation which necessitated the utmost caution. (R. 108-113). Moreover, Shapiro has an obligation to investigate and report any potential "Brady" issues. In that regard, it is undisputed that Plaintiff had a sustained violation, and, in that sense, Shapiro's hands were more or less tied. Regarding the Brady disclosure letter, this was due to Plaintiff having handled some evidence in the wiretap case making him a potential witness. As Shapiro also explained, this disclosure was made regarding three other officers involved in the case, not just Plaintiff. (R. 111). Finally, the internal affairs investigation into the service of a search warrant at an incorrect residence was initiated based a citizen complaint, which the CCPO is required to

investigate. (R. 191). Moreover, the allegations were based on credible information warranting further investigation. Plaintiff has not offered sufficient competent evidence to refute the above stated reasons. Thus, even if Plaintiff could establish his prima facie case for retaliation, those claims nonetheless fail.

**H.   Plaintiff's retaliation claims pursuant to 42 U.S.C. 1983 and the NJCRA are analyzed analogously and should therefore be dismissed for the same reasons.**

Plaintiff's retaliation claims under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA") are analyzed analogously and should therefore be dismissed for the same reasons. The NJCRA was codified under N.J.S.A. 10:6-2 and is modeled after 42 U.S.C. § 1983. Celestine v. Foley, 2010 U.S. Dist. LEXIS 132511, *22-24 (D.N.J. December 14, 2010); Rezem Family Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 115 (App. Div. 2011). Furthermore, New Jersey courts have looked to §1983 principles to edify questions regarding the New Jersey Civil Rights Act. See, e.g., Den Hollander v. Twp. Of Franklin, 2010 N.J. Super. Unpub. LEXIS 2314 (Law Div. January 22, 2010). Constitutional claims such as false arrest, excessive force, false imprisonment and malicious prosecution claims under the NJCRA are analyzed (and dismissed based on) the same reasoning as similar claims made pursuant to 42 U.S.C. § 1983. See, e.g., Middleton v. City of Ocean City, 2014 U.S. Dist. LEXIS 88368, at *18 n.4 (D.N.J. June 30, 2014) ("[F]ederal and New Jersey law governing Plaintiff's alleged constitutional

violations are substantially similar. As the Court holds that Plaintiff's false arrest, false imprisonment, malicious prosecution, and illegal search claims fail under the United States Constitution, they would similarly fail under article I paragraph 7 of the New Jersey Constitution."); Applewhite v. Twp. of Millburn, 2013 U.S. Dist. LEXIS 145759, at *12-13 (D.N.J. October 9, 2013) (stating that "the Court will analyze the NJCRA claim analogously to the § 1983 claim" and subsequently dismissing both claims based on a finding that probable cause existed). Thus, in the instant case, Plaintiff's NJCRA retaliation claim and Plaintiff's 42 U.S.C. § 1983 retaliation claim should be dismissed for the same reasons.

## I.      Plaintiff cannot establish his 42 U.S.C. 1983 and NJCRA retaliation claims.

First, Plaintiff's retaliation claims under 42 U.S.C. 1983 and the NJCRA should be dismissed for substantially the same reasons, outlined above, that Plaintiff's Title VII and NJLAD retaliation claims should be dismissed. See, e.g., Cottrell v. Wheels, 2011 U.S. Dist. LEXIS 26646, at *21-23 (D.N.J. Mar. 15, 2011) (analyzing and dismissing the plaintiff's ADA and NJLAD claims and then summarily dismissing the plaintiff's NJCRA claim because that claim was essentially a theory that "Defendants' violated [the plaintiff's] substantive right to be free from retaliation for activity protected under the ADA and the NJLAD"); see also, Williams v. Rowan Univ., 2014 U.S. Dist. LEXIS 171396, at *48 (D.N.J. Dec.

11, 2014) (citing <u>Cottrell</u> and dismissing the plaintiff's NJCRA retaliation claim for the same reasons the Court dismissed the plaintiff's NJLAD retaliation claim). As in <u>Cottrell</u> and <u>Williams</u>, Plaintiff's theory of liability in the instant case is essentially that his substantive right to be free of retaliation was violated when he engaged in protected activity under Title VII and the NJLAD. Thus, like the Court in <u>Cottrell</u> and <u>Williams</u>, this Court should dismiss Plaintiff's 1983 and NJCRA retaliation claims.

Nonetheless, Defendants will briefly analyze Plaintiff's 1983 and NJCRA retaliation claims apart from Plaintiff's Title VII and NJLAD claims. "To state a First Amendment retaliation claim, a public employee plaintiff must allege that his activity is protected by the First Amendment, and that the protected activity was a substantial factor in the alleged retaliatory action." <u>Gorum v. Sessoms</u>, 561 F.3d 179, 184 (3d Cir. 2009). "The first factor is a question of law; the second factor is a question of fact." <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 241 (3d Cir. 2006). "A public employee's statement is protected by the First Amendment when, (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have an adequate justification for treating the employee differently from any other member of the general public as a result of the statement he made." <u>Gorum</u>, 561 F.3d at 185 (*citations omitted*). "Whether an employee's speech addresses a matter of public

concern must be determined by the content, form, and context of a given statement, as revealed by the whole record. The content of speech on a matter of public concern generally addresses a social or political concern of the community, thus implicating significant First Amendment concerns." Id. at 187 (*citations omitted*).

First, in the instant case, it abundantly clear that when Plaintiff allegedly corroborated "some" of Wehling's allegations in response to specific questioning as part an internal and entirely confidential investigation, Plaintiff was not speaking in his capacity as a private citizen nor speaking on a matter of public concern, quite the opposite. Moreover, Plaintiff was not making any claims or statements regarding alleged widespread harassment or sexism throughout the CCPO, again, to the contrary, Plaintiff's statements related to an isolated issue between Det. Chopek and Det. Wehling. See, e.g., Mitchell v. Miller, 884 F. Supp. 2d 334, 362-65 (W.D. Pa. 2012) (noting that not every violation of Title VII committed by a public employer necessarily implicates matters of public concern and finding that the plaintiff's complaints that she was being mistreated because she was female did not rise to the level of a matter of public concern). Furthermore, for substantially the same reasons detailed above in Section III(D), Plaintiff cannot show that his speech was a "substantial factor" in any of the alleged adverse actions taken against him. There is simply no evidence that any of the Defendants gave any weight or consideration to Plaintiff's alleged "corroboration" of "some" of Wehling's allegations when making

any of the alleged adverse employment decisions. As such, Plaintiff's 1983 and NJCRA retaliation claims should be dismissed.

**J.     Plaintiff cannot establish his 42 U.S.C. 1983 due process claim.**

Plaintiff cannot establish his due process claims under 42 USC 1983 or the NJCRA. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976), <u>quoting</u>, <u>Armstrong v. Manzo</u>, 380 U.S. 545, 552, 85 S. Ct. 1187, 1191, 14 L. Ed. 2d 62 (1965)). Due process is "flexible and calls for such procedural protections as the particular situation demands." <u>Id</u>.

> *[W]hen a plaintiff challenges the validity of a legislative act, substantive due process typically demands that the act be rationally related to some legitimate government purpose. In contrast, when a plaintiff challenges a non-legislative state action (such as an adverse employment decision), we must look, as a threshold matter, to whether the property interest being deprived is "fundamental" under the Constitution. If it is, then substantive due process protects the plaintiff from arbitrary or irrational deprivation, regardless of the adequacy of procedures used. If the interest is not "fundamental," however, the governmental action is entirely outside the ambit of substantive process and will be upheld so long as the state satisfies the requirements of procedural due process.*
> <u>Nicholas v. Pa. State Univ.</u>, 227 F.3d 133, 142 (3d Cir. 2000)

As the Court held in <u>Nicholas</u>, a public employee's "right" to continued employment is not a "fundamental right" which implicates substantive due process. <u>Id</u>.; <u>see also</u>, <u>Smith v. Twp. of E. Greenwich</u>, 519 F. Supp. 2d 493, 503 (D.N.J. 2007).

"A two-stage analysis is employed to determine a procedural due process claim under 42 U.S.C. § 1983: (1) whether the asserted individual interests are encompassed within the fourteenth amendment's protection of life, liberty, or property; and (2) whether the procedures available provided the plaintiff with due process of law." Clayton v. City of Atl. City, 722 F. Supp. 2d 581, 590 (D.N.J. 2010).

As COS Cuff explained in his deposition, Plaintiff was not given a Notification of Complaint, a/k/a/ a "target letter," at the commencement of the Cruz investigation or the wrong residence investigation because Plaintiff was not an initial target in either investigation. (R. 90, 101-102). Nonetheless, even if Plaintiff were the initial target of either investigation, it is still not mandatory that Plaintiff be issued a target letter; rather, the investigating officer may decline to issue a target letter if that officer feels issuing the letter would hamper the investigation. (R. 90, 191, 194). Thus, there simply is no fundamental right to receive a "target letter." Moreover, even if there were, Plaintiff was provided ample notice and given an opportunity to have an attorney or Weingarten representative in both instances. (R. 182-186, 190). Plaintiff specifically declined any representation with regard to the Cruz investigation and did in fact choose to have representation with him for his interview for the wrong residence investigation. (R. 182-186, 190). Thus, even if there was some fundamental right to notice, it was amply provided to Plaintiff. Furthermore, with regard to procedural due process, even if it were the case that

Plaintiff should have received a formal "target letter," there is undisputedly a grievance procedure through Plaintiff's police union and there is no evidence that he availed himself of that procedure regarding any allegedly improper notice. Dykes v. Se. Pa. Transp. Auth., 68 F.3d 1564, 1572 n.6 (3d Cir. 1995) (noting that "grievance procedures outlined in collective bargaining agreements can satisfy due process requirements"). Thus, Plaintiff cannot establish his due process claims.

**K.    Plaintiff cannot establish his 42 U.S.C. 1985 civil right conspiracy claim.**

Plaintiff also cannot establish his civil rights conspiracy claim made pursuant to 42 USC 1985 (the Third Count of the Amended Complaint). To establish a civil conspiracy under 42 U.S.C. § 1985, a plaintiff must establish: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." H&R Grenville Fine Dining, Inc. v. Borough of Bay Head, 2011 U.S. Dist. LEXIS 145447, *27 (D.N.J. Dec. 19, 2011), citing, Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997).

Furthermore, "although section 1985(3) applies to private conspiracies, the statute was not intended to provide a federal remedy for all tortious, conspiratorial

Brief in Support of Motion for Summary Judgment by Defendants
BARKER, GELFAND, JAMES & SARVAS • A PROFESSIONAL CORPORATION •LINWOOD, NEW JERSEY 08221

interferences with the rights of others, or to be a general federal tort law." Id., citing, Farber v. City of Paterson, 440 F.3d 131, 135 (3rd Cir. 2006).  "[T]here must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Id., citing, Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). Moreover, the Supreme Court has expressly held that commercial or economic animus cannot form the basis for a cognizable § 1985(3) claim. Id. Thus, 'class' for the purposes of section 1985(3),

> *unquestionably connotes something more than a group of individuals*
> *who share a desire to engage in conduct that the § 1985(3) defendant*
> *disfavors. Otherwise, innumerable tort plaintiffs would be able to assert*
> *causes of action under § 1985(3) by simply defining the aggrieved class*
> *as those seeking to engage in the activity the defendant has interfered*
> *with.*
> Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268, 113 S. Ct. 753,
> 122 L. Ed. 2d 34 (1993).

Further, while "there are no precise parameters defining the boundaries of 'class' within the meaning of section 1985(3)," Lake, 112 F.3d at 685, the Third Circuit has held that "a reasonable person must be able to 'readily determine by means of an objective criterion or set of criteria who is a member of the group and who is not." Farber, 440 F.3d at 136, quoting, Aulson v. Blanchard, 83 F.3d 1, 5-6 (1st Cir. 1996)). The requirement that group membership be capable of ready determination reflects the Third Circuit's long-held determination that "[s]uch animus against a class must be based on: (1) immutable characteristics for which the

members of the class have no responsibility; and (2) historically pervasive discrimination." Russo v. Voorhees Twp., 403 F. Supp. 2d 352, 359-60 (D.N.J. 2005) (*citations omitted*). In other words, in order for a viable 1985 conspiracy claim to exist, "defendants must have allegedly conspired against a group that has an identifiable existence independent of the fact that its members are victims of the defendants' tortious conduct." Farber v. City of Paterson, 440 F.3d 131, 136 (3d Cir. 2006) (finding that an alleged class of "supporters of the administration" of the former mayor does not constitute a "class" within the meaning of 1985).

First, Plaintiff's 1985 conspiracy claim fails because he cannot show he belongs to a "class" within the meaning of 1985. As explained above, participating in an internal investigation constitutes neither a "protected activity" under Title VII or the NJLAD nor speech regarding "a matter of public concern" under 42 USC 1983 or the NJCRA. Moreover, even if Plaintiff could be said to have engaged in conduct which may be considered "protected activity" and/or speech regarding a "matter of public concern," that still would not satisfy the class requirement of a 1985 conspiracy claim because, as described above, the 1985 "class" requirement "connotes something more" than simply someone who engages in conduct "disfavored" by the Defendants. Second, for all of the reasons set forth earlier in this brief, Plaintiff cannot establish any wrongful conduct on the part of the Defendant let alone some type of concerted conspiracy. Indeed, rather than some sort of a

"concerted effort" on the part of the Defendants, the evidence in this case shows that each acted independently within the parameters of their position: Cuff investigated the internal affairs complaints as required by his position, Shapiro, years later, made an independent inquiry regarding any Brady concerns as he is required to do for every case, Necelis advised and met with Plaintiff in his capacity as Plaintiff's supervisor regarding Shapiro's determination, and Webb-McRae oversaw the office, recusing herself where necessary (i.e. the Wehling investigation). Finally, for the same reasons detailed above in this brief, Plaintiff cannot establish any injury because Plaintiff did not suffer any adverse employment action. Thus, Plaintiff cannot establish his civil conspiracy claim.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment should be granted and Plaintiff's Complaint should be dismissed with prejudice.

Respectfully submitted,

**BARKER, GELFAND, JAMES & SARVAS**
**a Professional Corporation**

By:   _____*s/Vanessa E. James*_____
      Vanessa E. James, Esquire

Date: October 25, 2019